**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 00-234-01 |
| v. | : | |
| | : | CIVIL ACTION |
| EDWARD TUNICK | : | NO. 04-2370 |

**MEMORANDUM**

**ROBERT F. KELLY, S.J.**                                              **JUNE 24, 2005**

Presently before this Court is the Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 by Edward Tunick ("Tunick").  For the reasons that follow, the Motion will be denied.

**I.      BACKGROUND**

On May 8, 2000, an indictment was unsealed charging Tunick with nine counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 1-9) and one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count 10).  After pleading not guilty, Tunick went to trial on January 10, 2001.  The jury returned guilty verdicts on all ten counts of the indictment on January 17, 2001.  Tunick was sentenced to a term of imprisonment of 97 months and ordered to pay restitution in the amount of $2,772,995.30 on September 21, 2001.

Tunick filed a timely notice of appeal to the United States Court of Appeals for the Third Circuit on October 1, 2001.  On December 9, 2002, the Court of Appeals affirmed the judgment and remanded the case with instructions to modify the restitution order making it joint and several.  On December 17, 2002, this Court entered an order in compliance with the Court of Appeals' order.  Tunick filed a petition for writ of certiorari with the United States Supreme Court on February 20, 2003.  The writ was denied on June 9, 2003.

On June 1, 2004, Tunick filed a *pro se* motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255.  On July 6, 2004, the motion was re-filed on the correct forms. The Government responded to the motion on August 11, 2004.  After the appointment of counsel for Tunick, an evidentiary hearing was held on February 11, 2005.

## II.    DISCUSSION

Tunick's motion is based upon two grounds.[1]  First, Tunick alleges that he was denied effective assistance of counsel based upon two grounds: (1) the failure of his counsel to investigate his mental competency and move for a competency hearing, and (2) the failure of his counsel to move for a downward departure based upon his alleged diminished capacity.  Second, Tunick alleges that his Sixth Amendment right to trial by jury was violated because his sentence was enhanced based upon facts not charged in the indictment, presented to a jury, and proven beyond a reasonable doubt.  I consider each argument in turn.

### A.    INEFFECTIVE ASSISTANCE OF COUNSEL

The legal standard applicable to Tunick's ineffective assistance of counsel claim is that articulated in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Supreme Court created a two-pronged test that a convicted defendant must satisfy to demonstrate ineffective assistance of counsel to the degree that a conviction must be overturned:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's

---

[1]  Tunick's original motion alleges a third ground, namely that he was denied his Fifth Amendment right to testify against the advice of his counsel.  However, after the evidentiary hearing in this matter, Tunick conceded that he had not established that ground and withdrew it.

2

errors were so serious as to deprive the defendant of a fair trial whose
result is reliable.

Id. at 687.

In assessing an attorney's performance, courts must be highly deferential, indulging a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption, under the circumstances, that the challenged action might be considered sound trial strategy." Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Courts must also be wary of second guessing counsel's decisions from the vantage point of hindsight. Id.

With respect to prejudice, in order to prove prejudice, the defendant must show that "the result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Id. at 372.

At the heart of the present matter is the state of Tunick's mental health at the time he went to trial. Tunick began experiencing mental health problems in 1998 following an FBI raid of his business. (N.T. 2/11/05 5-6). Tunick began seeing a psychiatrist and a psychologist for treatment at that time and was diagnosed with major depression. In January 2001, shortly before Tunick went to trial and after an extended period of treatment, Tunick's doctors changed his diagnosis to bipolar disorder and altered their treatment strategy. (N.T. 2/11/05 10). However, Tunick argues, and his doctor agrees, that although he was not diagnosed with bipolar disorder until immediately prior to trial, he was in fact suffering from it well before then. (N.T.

3

2/11/05 7-10).  Tunick argues that because he was suffering from bipolar disorder, which may skew a patient's view of reality, his attorneys should have taken his diminished mental capacity into account in handling his case.

Tunick was represented at trial by two attornes, Mr. Patrick Egan and Mr. Stephen La Cheen.  Both of Tunick's attorneys were aware of his mental health problems at all relevant times.  (N.T. 2/11/05 114, 141).  They were aware that Tunick has been diagnosed with depression; that he was being treated with medication; and that he was regularly receiving counseling.  (N.T. 2/11/05 141-43).  Tunick's attorneys were also in regular contact with his doctors.  (Id.).  Mr. Egan received regular reports from Tunick's doctors and both Msers. Egan and La Cheen participated in the decision not to place Tunick in an inpatient rehabilitation program.  (Id.)

Tunick's attorneys also had substantial exposure to Tunick himself.  During preparations for trial, Tunick spoke to Mr. Egan daily, sometimes several times a day.  (N.T. 2/11/05 134-35).  Tunick accompanied his attorneys to the U.S. Attorney's Office to review documents collected by the Government in his case, explaining them to his attorneys.  (N.T. 2/11/05 136).  He met with his attorneys on multiple occasions, discussed trial strategy with them, and made independent suggestions regarding witnesses.   While his attorneys did not always find Tunick's suggestions to be productive, Tunick did actively participate in his own defense.  (N.T. 2/11/05 117).

As a result, Tunick's attorneys had little reason to doubt his competency to stand trial, and their decision not to pursue an additional investigation and request a competency hearing was professionally reasonable under the circumstances.  "The reasonableness of

counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Strickland, 466 U.S. at 692. In this case, Tunick's attorneys' conclusion that he would have been found competent was based upon reasonable investigation and with awareness of the material facts regarding Tunick's condition. As a result, it was professionally reasonable under the circumstances.

Along the same lines, Tunick argues that his attorneys should also have sought a downward departure based upon diminished capacity at sentencing. At the time that Tunick was sentenced, United States Sentencing Guideline § 5K2.13 provided for a downward departure from the applicable sentencing range where "the defendant committed the offense while suffering from a significantly reduced mental capacity." Under the Guideline, the defendant may receive a downward departure if he has "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 app. n. 1. In order to qualify for the departure, the defendant must prove by a preponderance of the evidence that he suffered from a reduced mental capacity and must also show that the condition "contributed to the commission of the offense." United States v. McBroom, 124 F.3d 533, 539 (3d Cir. 1997).

While they were aware that a downward departure for diminished capacity may have applied to their client, Tunick's attorneys elected not to pursue it as part of their strategy of representation at sentencing. (N.T. 2/11/05 161-62). First, they did not believe they could meet the burden imposed upon them by the Guideline to demonstrate a sufficient lack of capacity.

(N.T. 2/11/05 148-49).  As a result, they elected not to make such an argument.  Second, Mr. Egan felt that making such an argument, especially one with little chances of success in his estimation, would detract from the other arguments he intended to make; arguments he felt had a better chance of success.  (Id.).

Furthermore, Tunick's attorneys wished to protect Tunick's income from a long term disability insurance policy.  (N.T. 2/11/05 150-53).  Tunick has been receiving benefits from a long term disability insurance policy for total disability due to his depression since 1998.  The benefits are substantial and constitute a large part of his family's support.  (N.T. 2/11/05 63-65).  Tunick was very concerned about a possible loss of benefits and informed his attorneys that he wished to try to protect them as much as possible.  (N.T. 2/11/05 150-53).  Mr. Egan also believed that if too much attention was drawn to the policy, it may have provided a reason for a possible upward departure from the guideline range.  (Id.).  As a result, part of Tunick's counsel's strategy was to draw as little attention to the policy as possible.  A necessary element of that strategy was to drop references to diminished capacity.

Tunick again fails to demonstrate that his attorneys' strategy was professionally unreasonable.  In light of the circumstances of Tunick's case, and his priorities at the time he was on trial, it would be difficult for Tunick to overcome the presumption that the decision not to seek a departure based upon diminished capacity "might be considered sound trial strategy."  Strickland, 466 U.S. at 689 (citing Michel, 350 U.S. at 101).  "No particular set of detailed rules for counsel's conduct can satisfactorily take account of . . . the range of legitimate decisions regarding how best to represent a criminal defendant.  Any such set of rules would . . . restrict the wide latitude counsel must have in making tactical decisions."  Strickland, 466 U.S. at 688-89

(citing <u>United States v. Decoster</u>, 624 F.2d 196, 208 (D.C. Cir. 1976)).  Tunick's counsel can hardly be faulted for what was a successful strategy in light of Tunick's priorities.  Tunick continues to receive disability benefits, and while his other motions for adjustments and departures were denied, his attorneys made a detailed and extensive presentation at sentencing. Accordingly, there are no grounds to conclude that they were ineffective.

**B.      RIGHT TO TRIAL BY JURY**

Tunick also argues that his sentence is invalidated by the recently announced decision of the United States Supreme Court in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005). In <u>Booker</u>, the Supreme Court reaffirmed its previous holdings in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), and <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), requiring that certain facts used at sentencing be decided by a jury beyond a reasonable doubt.  In <u>Apprendi</u>, the Court held that "[a]ny fact (other than a previous conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S. at 476.  The <u>Apprendi</u> ruling was widely believed to apply only to sentences that exceeding the maximum as set by statute.  However, the Court later clarified the definition of maximum in <u>Blakely</u> by holding that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Blakely</u>, 124 S. Ct. at 2537 (emphasis omitted).  As a result, <u>Apprendi</u> became applicable to state sentencing regimes relying upon mandatory guidelines.  In <u>Booker</u>, the Court held that <u>Apprendi</u> was applicable to the Federal Sentencing Guidelines.

The "Booker majority held that mandatory enhancement of a sentence under the Guidelines, based on facts found by the court alone, violates the Sixth Amendment." United States v. Davis, - - - F.3d - - -, 2005 WL 976941, at *1 (3d Cir. Apr. 28, 2005) (citation omitted). "To remedy this constitutional infirmity, the Court excised that provision of the statute making application of the Guidelines mandatory," thereby bringing about sweeping changes in the realm of federal sentencing. Id. The Guidelines, once a mandatory regime circumscribing the discretion of district court judges are now effectively advisory. Under the post-Booker sentencing regime, district courts will consider the applicable advisory Guidelines range in addition to other factors set forth in 18 U.S.C. § 3553(a) in determining a sentence. Id.

While Booker applies to cases currently on direct review, id., it does not apply to cases on collateral review. Lloyd v. United States, - - - F.3d - - -, 2005 WL 1155220, at *6 (3d Cir. May 17, 2005). Although Booker announced a new procedural rule, the Booker holding does not create a watershed rule that significantly increases the certitude or accuracy of the sentencing process. Id. Rather, defendants' sentences "would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system." Id. (quoting McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005)). As a result, Booker does not apply retroactively to cases on collateral review and criminal judgments made final before the announcement of the Booker decision will remain untouched. Tunick's criminal judgment became final on June 9, 2003, and therefore does not qualify for relief under Booker.

**III.** <u>**CONCLUSION**</u>

      As I conclude that none of the challenged actions of Tunick's counsel were professionally unreasonable, there are no grounds establishing the ineffective assistance of counsel.  Furthermore, as <u>Booker</u> does not apply retroactively to initial motions under 28 U.S.C. § 2255 where the judgment was final pre-<u>Booker</u>, there has been no Sixth Amendment violation of the right to trial by jury.

      An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 00-234-01 |
| v. | : | |
| | : | CIVIL ACTION |
| EDWARD TUNICK | : | NO. 04-2370 |

<u>**ORDER**</u>

**AND NOW**, this   24th   day of June, 2005, upon consideration of Edward Tunick's Motion to Set Aside, Vacate, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 (Doc. No. 65), the Response in opposition thereto, and after an evidentiary hearing thereon, it is hereby **ORDERED** that:

1.      the Motion is **DENIED**; and

2.      no cause exists for the issuance of a Certificate of Appealability.

BY THE COURT:


/s/ Robert F. Kelly_____
ROBERT F. KELLY                    S.J.